UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NIXON LORENZO C.,

      Petitioner,

    v.

CHRISTOPHER CHESTNUT,

      Respondent.

No. 2:26-cv-00457-TLN-EFB

**ORDER**

This matter is before the Court on Petitioner Nixon Lorenzo C.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) On February 20, 2026, the Court ordered Respondent to respond to Petitioner's request for immediate injunctive relief. (ECF No. 5.) Respondent was directed to inform the Court whether Respondent requested entry of final judgment on the habeas petition if the Court was inclined to grant preliminary relief. (*Id.*) On February 25, 2026, Respondent filed an opposition to Petitioner's habeas petition. (ECF No. 7.) Petitioner filed a reply. (ECF No. 8.) For the reasons set forth below, Petitioner's habeas petition is GRANTED. (ECF No. 1.)

///

///

///

///

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Petitioner is a citizen of Honduras who entered the United States on an unknown date. (ECF No. 8 at 2.)  After an initial encounter with immigration authorities, Petitioner was released on the condition that he check-in with Immigration and Customs Enforcement ("ICE") as instructed.  (*Id.*)  Petitioner thereafter filed an application seeking asylum.  (*Id.*)  Petitioner submits that while waiting for the disposition of his asylum application, he diligently attended all ICE appointments.  (*Id.*)  Petitioner obtained a work permit and social security card, which enabled him to work while living in the United States.  (*Id.*)

On January 22, 2026, immigration authorities arrested Petitioner while he was at work. (*Id.*)  Petitioner did not receive a bond hearing.  (*Id.*)

On February 17, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus. (ECF No. 1.)  Petitioner challenges the lawfulness of his civil detention and seeks immediate release.  (*Id.* at 7.)

## II.  STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v.*

---

[1]  The Court's February 20, 2026 order required that any opposition filed by Respondent include "all referenced and relevant portions of Petitioner's A-File and any and all available records related to Petitioner's allegations."  (ECF No. 5 at 1–2.)  Respondent did not comply with this directive and instead filed an opposition with no documents and that set forth no facts.  (*See generally* ECF No. 7.)  The Court thus relies on Petitioner's recitation of the facts.

2

*Davis*, 533 U.S. 678, 687 (2001).

**III.    ANALYSIS**

Petitioner claims his detention violates the Immigration and Nationality Act and the Due Process Clause.  (ECF No. 8 at 3.)  In opposition, Respondent contends Petitioner is an "applicant for admission," subject to the mandatory detention scheme of 8 U.S.C. § 1225(b)(2)(A) ("§ 1225(b)(2)").  (ECF No. 7 at 1–2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).  To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest

3

in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, the Court finds Petitioner has a protected liberty interest in his continued freedom. After his initial encounter with immigration authorities, Petitioner was released on the condition that he check-in with ICE. (ECF No. 8 at 2.) Under *Morrissey*, this release was an implied promise that Petitioner would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. 408 U.S. at 482. Petitioner submits that he attended all ICE appointments. (ECF No. 1 at 6.) Respondent does not dispute this or claim Petitioner was detained for violating the conditions of his release. (*See generally* ECF No. 7.) Further, prior to re-detention, Petitioner lived and worked in the United States. (ECF No. 8 at 5.) Petitioner thus developed "enduring attachments of normal life" during his conditional release as described in *Morrissey*, 408 U.S. at 482. For these reasons, the Court finds Petitioner has a clear liberty interest in his continued freedom as he awaits the outcome of his immigration and asylum proceedings protected by the Fifth Amendment. *See Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody.").

The Court is not persuaded by Respondent's argument that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2). (ECF No. 7 at 1–2.) Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondent's argument on the applicability of § 1225(b)(2). *See e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 at *3(E.D. Cal. Dec. 9, 2025); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed

reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).  Respondent put forth no new arguments or facts justifying reconsideration in this case.

Petitioner therefore has a liberty interest in his release from immigration detention protected by the Due Process Clause.

### B.      Process Required

Having found Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).  As set forth below, the *Mathews* factors support Petitioner's constitutional right to notice and a hearing before a neutral decisionmaker prior to re-detention.

First, as explained above, Petitioner has a substantial private interest in remaining free from detention.  That Petitioner was released by immigration authorities and working strengthens his liberty interest.  (ECF No. 8 at 2.) *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.")

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. "Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a

noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025). Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing where a neutral arbitrator could make findings as to whether he presents a risk of flight or danger to the community. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Petitioner has complied with the conditions of his release. (ECF No. 8 at 5.) Thus, without procedural safeguards to ensure his detention is justified, the risk that Petitioner is being erroneously deprived of his liberty is high.

Third, the government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is negligible. Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the government's interest is further diminished where, as here, Petitioner was already found appropriate for release and has complied with the conditions of his release. *R.D.T.M.*, 2025 WL 2686866 at *6. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."). *Hernandez*, 872 F.3d at 994.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a pre-deprivation hearing before a neutral arbitrator prior to his detention. He received neither. Respondent therefore violated Petitioner's due process rights.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.)  IT IS HEREBY ORDERED:

1.    Respondent must IMMEDIATELY RELEASE Petitioner from custody under the same conditions he was released prior to his current detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy."). At the time of release, Respondent must return all of Petitioner's documents and possessions. Respondent shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary

at a future pre-deprivation/custody hearing. **Respondent must file a notice certifying compliance with this provision of the Court's Order by March 10, 2026.**

2.    Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

3.    The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: March 6, 2026

_____
Troy L. Nunley
Chief United States District Judge